UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN VAN BUREN, | Case No. 1:13-cv-01273 DLB PC |
| Plaintiff, | **ORDER DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT <u>OR</u> NOTIFY COURT OF HIS WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIM** |
| v. | |
| WILLARD, et al., | |
| Defendants. | **THIRTY-DAY DEADLINE** |

Plaintiff Irvin Van Buren ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on August 14, 2013. Plaintiff names Correctional Officers J.D. Willard, E. Wilson, N. Emerson, R. Cummings and Alva, Correctional Sergeant A. Chan, Correctional Lieutenants M. Lopez, J. Perez and J. Rivero, Dr. R. Scharffenberg, Dr. J. Jackson and PA C. Ogbuehi as Defendants.[1]

**A.      LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on August 26, 2013.

1

1  § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid,
2  the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . .
3  fails to state a claim upon which relief may be granted." 28 U.S.C.
4  § 1915(e)(2)(B)(ii).

5      A complaint must contain "a short and plain statement of the claim showing that the pleader
6  is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but
7  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
8  do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly,
9  550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to
10 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual
11 allegations are accepted as true, legal conclusions are not. Id.

12     To state a claim, Plaintiff must demonstrate that each defendant personally participated in the
13 deprivation of his rights. Id. at 1949. This requires the presentation of factual allegations sufficient
14 to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572
15 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this
16 plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

17 **B.     SUMMARY OF PLAINTIFF'S ALLEGATIONS**

18     Plaintiff is currently incarcerated in the California Substance Abuse Treatment Facility in
19 Corcoran, California, where the events at issue occurred.

20     Plaintiff states that he has been diagnosed with gynecomastia, a condition which causes male
21 breast tissue to grow. Plaintiff states that as a result, he suffers from chronic pain "off and on."
22 Comp. 5. He explains that he has requested corrective surgery, but has been denied. As a result,
23 Plaintiff alleges that he is constantly subjected to embarrassment, humiliation, anxiety and
24 depression.

25     On September 13, 2012, when officers were searching cell block 2, Sergeant Jones and other
26 correctional officers ordered all inmates on the top tier to exit their cell wearing only t-shirts, boxers
27 and shower shoes. After the top tier was searched, Defendant Willard approached Plaintiff's cell
28 and ordered him to remove his t-shirt before exiting the cell. Plaintiff told Defendant Willard that

2

other inmates were allowed to wear their t-shirts, and that he didn't have a problem with a strip search and would strip out in his cell.  Defendant Willard told Plaintiff that the search would only take a second and asked why Plaintiff couldn't be without his t-shirt.  Plaintiff told him that he had a medical condition called "gynecomastia," and when Defendant Willard asked him what that meant, Plaintiff responded, "it means I got bitch tits."  Comp. 7.  Defendant Willard said, "so what" and ordered Plaintiff to remove his t-shirt.  Plaintiff told him that he felt uncomfortable and embarrassed by stripping out in the open and that he'd rather go to the cage to strip out.

Defendant Willard then cuffed Plaintiff and escorted him to the Program Office Holding Cell and strip searched him with negative results.  Defendant Willard wrote a Rule Violation Report charging Plaintiff with delaying a peace officer in the performance of his duties.

Due to the constant nature of such incidents, Plaintiff submitted an appeal to the Health Care Department on September 17, 2012, requesting corrective surgery.

On September 18, 2012, Plaintiff appeared before Senior Hearing Officer Defendant Perez.  Plaintiff pled not guilty and explained his genetic issue to Defendant Perez.  Defendant Perez told him that if he had a medical issue, he needed to take it up with medical.  Defendant Perez found Plaintiff guilty of the rule violation.  Plaintiff lost privileges and was placed on C-status for 30 days.

In late September 2012, Plaintiff filed an appeal of the guilty finding.

On September 24, 2012, the Health Care Appeals Coordinator rejected Plaintiff's Health Care Appeal.

On October 15, 2012, Plaintiff was interviewed by Appeals Coordinator Cota relating to his appeal of the guilty finding.  Plaintiff explained the effects of his condition to Defendant Cota and told him that Defendant Willard was unprofessional.

On October 16, 2012, Plaintiff was called to a special ICC meeting.  He was placed on C-status again, but this time for 180 days.  Plaintiff tried to explain his situation to the committee, but Captain Collins told him to take up the issue with medical.

Also on October 16, 2012, Plaintiff saw Defendant Clement.  He was again diagnosed with gynecomastia by Defendant Clement and Defendant Jackson.  Defendant Jackson recommended

surgery, but the surgery was denied again because the state does not allow cosmetic procedures for inmates.

On October 17, 2012, because Plaintiff was on C-status, he was moved to Building 3. Defendant Emerson confiscated his personal property (television, hot pot, fan, personal tennis shoes, etc.) and illegally donated it without his permission.

When Plaintiff appealed Defendant Emerson's actions, Defendant Emerson "falsified the confiscation document," stating that another officer confiscated the property.

On November 10, 2012, Defendant Wilson confiscated Plaintiff's personal property (a CD player) and threw it into the trash.

In mid-November 2012, Plaintiff was attacked by a group of inmates while in the medical line. Plaintiff contends that the inmates were coerced by Defendant Emerson, who directly instigated race riots between Mexican and African American inmates.

On November 21, 2012, Plaintiff contends that he was falsely accused by officers on D facility of a conspiracy to assault staff. Defendant Rivero removed Plaintiff from D facility and placed him in Administrative Segregation.

On November 29, 2012, while housed in Ad-Seg, Plaintiff appeared before the ICC Committee for the conspiracy to assault staff accusation. Plaintiff was released back to D facility, Building 4, after a finding that the evidence was unsubstantiated. However, the committee retained Plaintiff on C-status. During the Building 4 medication line release, Defendant Emerson went to Building 4 and escorted Plaintiff back to Building 3, threatening Plaintiff that if he didn't move to Building 3, he would be placed in Ad-Seg again.

On December 2, 2012, Plaintiff wrote to the Appeal Coordinator to inquire about the status of his appeal relating the September Rule Violation Report. Plaintiff explained that he had never received a response.

On December 12, 2012, Plaintiff received a response. However, the document was missing both the final copy of the Rule Violation Report and the Second Level response.

On December 13, 2012, Plaintiff wrote to the Appeal Coordinator about the missing documents that were necessary for the appeal to move forward.

4

On December 16, 2012, Plaintiff also wrote to the Appeal Reviewing staff explaining the problem and requesting copies of the missing documents.

When Plaintiff received the missing documents from the Appeal Reviewing staff, he noticed that the documents were falsified. Staff indicated that Plaintiff pled "guilty," but he had actually pled "not guilty."

On January 16, 2013, because of Plaintiff's C-status and because Defendant Emerson moved Plaintiff back to Building 3, Plaintiff was attacked by his cell mate, Inmate Moss, while he was asleep on his bunk. Plaintiff alleges that Moss, a Mexican inmate, was placed in his cell by Defendant Emerson. Defendant Emerson coerced Moss to assault Plaintiff. Plaintiff suffered a broken jaw and required surgery.

On January 23, 2013, due to a second altercation set-up by staff between Plaintiff and Moss, Plaintiff was placed in Ad-Seg and charged with battery on an inmate.

On January 31, 2013, while in Ad-Seg, Plaintiff and Moss appeared before the ICC committee for the two prior altercations. Plaintiff was retained in Ad-Seg, while Moss "compensated handsomely" and immediately released from C-status, promoted to "AIA" status, assigned a job and had his credits and privileges restored in full. Comp. 17.

On May 8, 2013, while Plaintiff was still housed in Ad-Seg for safety reasons, Defendant Chan forcefully ordered Plaintiff to take Inmate Foster as his cell mate. Plaintiff told Defendant Chan that they were not compatible because they almost had a prior altercation in 2012.

A few days prior to May 8, 2013, Defendant Alva tried to force Plaintiff to house with Inmate Tillman, who is Plaintiff's documented enemy.

On May 15, 2013, Plaintiff filled out a Health Care Service Request form regarding his surgery. Plaintiff saw Defendant Scharffenberger and complained of the constant pain. Defendant Scharffenberger denied the request, based on CDCR policy.

On May 16, 2013, Plaintiff was interviewed by Defendant Chan about his safety concerns with being housed with certain inmates. He told Defendant Chan how he was set-up by officers and that as a result, his jaw was broken. Plaintiff told Defendant Chan that he is concerned for his safety and fears reprisal from other officers.

On May 22, 2013, while Defendant Emerson was escorting Plaintiff to the law library, Defendant Chan asked him if he would take Inmate Caldwell as his cell mate. Plaintiff agreed.

On May 23, 2013, Defendant Alva removed Plaintiff from his cell under false pretenses, claiming that Defendant Chan wanted to ask him a question. When Plaintiff was out of the cell, Defendant Alva escorted him to a holding cage and told Plaintiff that he had received information that Plaintiff had a weapon in the cell and that he needed to conduct a search.

Also on May 23, 2013, Plaintiff filed a Request for Interview with Defendant Lopez concerning Plaintiff's safety concerns and reprisal actions by staff. Defendant Lopez ignored Plaintiff's safety concerns by not responding to the request.

Defendant Cummings falsified a Rule Violation Report, charging Plaintiff with refusing a cell mate. Plaintiff alleges that he never talked to Defendant Cummings about a cell mate.

On May 28, 2013, Plaintiff filed another appeal to Health Care Services.

On June 4, 2013, Defendant Lopez "unjustly" found Plaintiff guilty of the Rule Violation Report relating to refusing a cell mate and assessed an additional 180 day-loss of all personal appliances and access to the prison canteen to purchase necessities. Comp. 20. Plaintiff contends that since this action by Defendant Lopez, he has been suffering from pain and strain in his eyes, migraine headaches and rapid weight loss. Plaintiff explains that he usually supplements his nutrition with additional food from the prison canteen. Plaintiff states that he is also unable to purchase toothpaste, deodorant, soap, shampoo, all cosmetic items and stationary for legal purposes.

On July 15, 2013, the Health Care Services Department denied Plaintiff's appeal at the Second Level, citing CDCR policy prohibiting cosmetic surgeries.

On July 30, 2013, Plaintiff's appeal relating to Defendant Willard was denied at the Third Level.

Based on these allegations, Plaintiff alleges violations of the Eighth Amendment and the California Constitution. Plaintiff also alleges a violation of Section 3287(B) of Title 15 of the California Code of Regulations. He requests monetary damages as relief.

**C.     ANALYSIS**

   1.     Eighth Amendment- Cruel and Unusual Punishment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

   a.     *Defendant Willard*

Plaintiff alleges that Defendant Willard was unprofessional and unreasonable in ordering him to take off his t-shirt in view of others. He further contends that Defendant Willard imposed unjust discipline when Plaintiff failed to follow orders.

The standard under the Eighth Amendment requires "conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress

7

of a maturing society. . ." Morgan, 465 F.3d at 1045 (quotation marks and citations omitted). Inherent in this standard is the recognition that prison conditions are often restrictive and harsh, though they cannot involve the wanton and unnecessary infliction of pain. Here, Defendant Willard ordered Plaintiff to remove his t-shirt prior to exiting his cell during cell searches. While Plaintiff may have been embarrassed at the thought of doing so, this does not rise to the level of an Eighth Amendment violation. Moreover, Plaintiff refused to do so and ultimately received a Rule Violation Report from Defendant Willard. Though Plaintiff believes the violation was unjust, Plaintiff is in prison and cannot refuse to follow direct, reasonable orders. The resulting violation was simply a product of Plaintiff's failure to obey and does not constitute an Eighth Amendment violation.

Accordingly, Plaintiff fails to state a claim against Defendant Willard.

b.  *Defendants Perez, Rivero, Cummings, Lopez and Alva*

Plaintiff alleges that these Defendants took some type of disciplinary action against him that he characterizes as unjust. Specifically, he faults Defendant Perez for finding him guilty of disobeying Defendant Willard's orders, Defendant Rivero for putting him in Ad-Seg, Defendant Cummings for allegedly falsifying a Rule Violation Report, Defendant Lopez for finding him guilty of the report and Defendant Alva for trying to force him to cell with another inmate and removing Plaintiff from his cell under "false pretense." Compl. 19. However, although Plaintiff may disagree with these actions, they are not Eighth Amendment violations. To the extent that Plaintiff alleges that Defendant Lopez's ban on the canteen caused pain and did not allow him to buy toothpaste, etc., the discipline alone does not amount to deliberate indifference.

Plaintiff therefore fails to state a claim against Defendants Perez, Rivero, Cummings, Lopez and Alva.

c.  *Defendants Emerson and Wilson*

Plaintiff contends that Defendants Emerson and Wilson illegally took certain items from Plaintiff's cell and either donated them or threw them away. Plaintiff does not allege any facts, however, that would suggest that they were deliberately indifferent to a substantial risk to Plaintiff's health or safety.

Moreover, insofar as Plaintiff suggests that that this alleged deprivation of property violated the due process clause, he is advised that he cannot state a claim. The Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). Plaintiff has an adequate post-deprivation remedy under California law and therefore, he may not pursue a due process claim arising out of the unlawful confiscation of his personal property. Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§810-895).

Plaintiff therefore fails to state a claim against Defendants Emerson or Wilson.

2.  Eighth Amendment- Deliberate Indifference

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Here, Plaintiff alleges that Defendants Ogbuehi, Jackson and Scharffenberg violated his Eighth Amendment rights by refusing to approve corrective surgery. However, this is not a case where Defendants have refused to treat Plaintiff, or failed to respond to his medical needs. At most, Plaintiff disagrees with the prescribed course of treatment, which is insufficient as a matter of law to establish deliberate indifference.

9

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff has failed to allege that Defendants acted with deliberate indifference to a serious medical need and he therefore fails to state a claim against Defendants Ogbuehi, Jackson and Scharffenberg.

3. Eighth Amendment- Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Here, Plaintiff alleges that in November 2012, he was attacked by a group of inmates who had been coerced by Defendant Emerson. He further alleges that in January 2013, Defendant Emerson placed Inmate Moss into a cell and coerced him to attack Plaintiff. This is sufficient to state an Eighth Amendment claim against Defendant Emerson.

Plaintiff also alleges that in May 2013, Defendant Chan forced him to accept Inmate Foster as a cellmate, despite Plaintiff's explanation to Defendant Chan that they were not compatible. A few days later, Defendant Alva tried to force Plaintiff to house with Inmate Tillman, a documented enemy. Plaintiff further alleges that Defendants Chan and Lopez, also in May 2013, ignored his safety concerns. However, unlike the allegations against Defendant Emerson, there was no resulting attack. Absent harm, Plaintiff cannot state a claim for failure to protect against Defendants Chan, Alva or Lopez.

10

### 4. California Code of Regulations

Plaintiff alleges that Defendants violated Section 3287(a), of Title 15 of the California Code of Regulations. The section pertains to cell, property and body inspections. However, the Court is unaware of any authority for the proposition that there exists a private right of action available to Plaintiff for violation of Title 15 regulations, and there exist ample district court decisions holding to the contrary. See e.g., Vasquez v. Tate, 2012 WL 6738167, at *9 (E.D. Cal. 2012); Davis v. Powell, 901 F.Supp.2d 1196, 1211 (S.D. Cal.2012).

Plaintiff is therefore unable to state a claim under Title 15.

### 5. California Constitution

Finally, Plaintiff alleges a violation of the Article 1, section 17 of the California Constitution. Section 17 states, "Cruel or unusual punishment may not be inflicted or excessive fines imposed."

However, Plaintiff's Eighth Amendment claim is properly analyzed under the United States Constitution rather than the California Constitution. See Giraldo v. California Dep't of Corr. and Rehab., 168 Cal.App.4th 231, 253–57, 85 Cal.Rptr.3d 371 (Cal.Ct.App.2008), citing Katzberg v. Regents of the University of California, 29 Cal.4th 300, 329, 127 Cal.Rptr.2d 482, 58 P.3d 339 (2002)) (there is no private cause of action for damages for violation of the cruel and unusual punishments clause of the California Constitution at article 1, section 17).

Plaintiff therefore fails to state a claim under the California Constitution.

## D. CONCLUSION AND ORDER

Plaintiff's Complaint states a cognizable claim against Defendant Emerson for violation of the Eighth Amendment. It does not state any other claims against any other Defendants. Plaintiff may either (1) proceed on his cognizable claim, identified above, or (2) file an amended complaint curing the deficiencies identified in this order. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff files an amended complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Further, Plaintiff is notified that his amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012)

(en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

If Plaintiff is willing to proceed on his cognizable claim, he may notify the Court in writing. The Court will then dismiss Plaintiff's other claims and Defendants, and provide Plaintiff with further instructions regarding service of a summons and the complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only on the cognizable claim identified above.

3. <u>If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order</u>.

IT IS SO ORDERED.

Dated:   **February 21, 2014**          /s/ *Dennis L. Beck*
                                        UNITED STATES MAGISTRATE JUDGE