# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

IRVIN VAN BUREN,

    Plaintiff,

  v.

WILLARD, et al.,

    Defendants.

Case No. 1:13-cv-01273 DLB PC

**ORDER FINDING COGNIZABLE CLAIM AND DISMISSING REMAINING CLAIMS AND DEFENDANTS**

Plaintiff Irvin Van Buren ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on August 14, 2013. On February 21, 2014, the Court screened Plaintiff's complaint and found a cognizable Eighth Amendment claim against Defendant Emerson. Plaintiff was ordered to either file an amended complaint, or notify the Court of his willingness to proceed only on the cognizable claim.

On March 20, 2013, Plaintiff filed his First Amended Complaint ("FAC"). He names Correctional Officers J. D. Willard and N. Emerson, Health Care CEO S. Follett, and Chief of Inmate Health Care Appeals L. D. Zamora as Defendants.[1]

## A.   LEGAL STANDARD

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on August 26, 2013.

1

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Id. at 1949.  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

**B.      SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Kern Valley State Prison ("KVSP").  The events at issue occurred while he was housed at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California.

Plaintiff states that he has been diagnosed with gynecomastia, a condition which causes male breast tissue to grow.  As a result, Plaintiff suffers from physical pain in his chest area and is constantly subjected to embarrassment, humiliation, anxiety and depression.  He explains that he has requested corrective surgery, but has been denied.

*Health Care Issues*

Plaintiff was diagnosed with gynecomastia in 2008, while housed at KVSP. Dr. Chen (KVSP) and Dr. Rodriguez (Mercy Hospital), both recommended surgery to alleviate Plaintiff's pain. Dr. Ashby (KVSP) also recommended surgery as the only remedy, but told Plaintiff that CDCR policy excludes such procedures or surgery.

On September 17, 2012, while housed at SATF, Plaintiff attempted to file a health care appeal seeking surgery. On September 24, 2012, his appeal was rejected because he first needed to be evaluated by medical stagg.

On October 16, 2012, Plaintiff saw KVSP doctors Ogbuehi and Jackson. Both doctors recommended surgery as the only remedy to alleviate Plaintiff's pain. However, Dr. Jackson informed Plaintiff that CDCR policy excludes such procedures.

On May 6, 2013, Plaintiff submitted a health care request for follow up. On May 15, 2013, Plaintiff saw Dr. Scharffenberg, who also opined that surgery was the only remedy. He again told Plaintiff that CDCR policy does not allow this type of surgery.

Plaintiff then filed a health care appeal requesting the recommended surgery to alleviate pain. On July 15, 2013, Defendant Follett denied Plaintiff's appeal at the Second Level, citing Title 15 of the California Code of Regulations, section 3350.1. According to Exhibit B, attached to the FAC, Defendant Follett explained that Plaintiff was seen by Dr. Scharffenberg on May 15, 2013. Dr. Scharffenberger advised Plaintiff that the surgical procedure is considered cosmetic, and therefore excluded under CCR Title 15. Defendant Follett also noted that on October 16, 2012, when Plaintiff saw Dr. Ogbuehi, Plaintiff had a psychological concern and complained of no pain in the area.

On November 13, 2013, Defendant Zamora denied Plaintiff's appeal because the procedure is not medically necessary.

Plaintiff alleges that he has not received any treatment to alleviate the pain he is forced to endure because of CDCR policy.

*Unreasonable Search*

On September 13, 2012, when officers were searching cell block 2, Sergeant Jones and other correctional officers ordered all inmates on the top tier to exit their cell wearing only t-shirts, boxers and shower shoes. Some of the inmates wore only boxers, while others also wore t-shirts. Plaintiff contends that the inmates had a choice as to what to wear.

After the top tier was searched, Defendant Willard approached Plaintiff's cell. Plaintiff exited his cell wearing a t-shirt, boxers and shower shoes. Defendant Willard ordered Plaintiff to remove his t-shirt before exiting the cell. Plaintiff told Defendant Willard that other inmates were allowed to wear their t-shirts, and that he didn't have a problem with a strip search and would strip out in his cell. Defendant Willard told Plaintiff that he only wanted to search the cell and that the search would only take a second. Defendant Willard said that other inmates were out without their t-shirts and asked Plaintiff why he couldn't be without his t-shirt. Plaintiff told him that he had a medical condition called "gynecomastia," and when Defendant Willard asked him what that meant, Plaintiff responded, "it means I got bitch tits." Defendant Willard said, "so what, remove your t-shirt."

Plaintiff then told Defendant Willard that he felt uncomfortable and embarrassed by stripping out in the open. Plaintiff told Defendant Willard that he was allowing all transgender inmates to wear their t-shirts, and that Plaintiff was in the same situation. Defendant Willard told Plaintiff that he couldn't allow Plaintiff to wear his t-shirt, and Plaintiff asked if he could be taken to the cage to strip out.

Defendant Willard then cuffed Plaintiff and escorted him to the Program Office Holding Cell and strip searched him with negative results. In retaliation, Defendant Willard wrote a Rule Violation Report charging Plaintiff with delaying a peace officer in the performance of his duties. As a result of the violation, Plaintiff lost all of his personal property and was placed into lock-up status.

Plaintiff alleges that he was respectful in verbally expressing his personal concerns to Defendant Willard, and he had a "human right to be treated with dignity" and not be "embarrassed

4

due to his genetic condition." Plaintiff contends that, at the very least, he was entitled to some standard of privacy from an unreasonable body search.

*Failure to Protect*

On October 17, 2012, because Plaintiff was on C-status, he was moved to Building 3. Defendant Emerson confiscated his personal property and donated it to the state without Plaintiff's consent.

When Plaintiff appealed Defendant Emerson's actions and claimed that Defendant Emerson "falsified the confiscation document," Defendant Emerson became irate with Plaintiff. From that day on, Defendant Emerson targeted Plaintiff by harassing him.

In mid-November 2012, Plaintiff was attacked in the medical line by a large group of Mexican inmates. Plaintiff alleges that the inmates were coerced by Defendant Emerson, who directly instigated race riots between Mexican and African American inmates.

On November 21, 2012, Plaintiff contends that he was falsely accused by officers on D facility of a conspiracy to assault staff. Lt. Rivero removed Plaintiff from D facility and placed him in Administrative Segregation.

On November 29, 2012, while housed in Ad-Seg, Plaintiff appeared before the ICC Committee for the conspiracy to assault staff accusation. Plaintiff was released back to D facility, Building 4, after a finding that the evidence was unsubstantiated. During the Building 4 medication line release, Defendant Emerson went to Building 4 and escorted Plaintiff back to Building 3, threatening Plaintiff that if he didn't move to Building 3, he would be placed in Ad-Seg again. When Plaintiff told Defendant Emerson that he wasn't comfortable with Inmate Moss (a Mexican South Sider Gang Member) as his cellmate due to the recent race riot in Building 3, Defendant Emerson told Plaintiff that he was still on C-status and did not have the luxury of choosing his cellmate. He then smiled at Plaintiff.

Defendant Emerson moved Plaintiff back to Building 3 and housed him with Inmate Moss.

On January 16, 2013, Plaintiff was attacked by Inmate Moss, while he was asleep on his bunk. Plaintiff suffered a broken jaw and required surgery.

5

After the incident, Defendant Emerson moved Inmate Moss to the lower tier in the same building. Plaintiff asked Defendant Emerson to move Plaintiff to another building because he wasn't comfortable with Inmate Moss being so close. Defendant Emerson said that they were both still on C-status and that all C-status inmate must stay in the building.

On January 23, 2013, due to a second altercation set-up by Defendant Emerson between Plaintiff and Moss, Plaintiff was placed in Ad-Seg and charged with battery on an inmate.

On January 31, 2013, while in Ad-Seg, Plaintiff and Moss appeared before the ICC committee for the two prior altercations. Plaintiff was retained in Ad-Seg, while Moss "compensated handsomely" and immediately released from C-status, promoted to "AIA" status, assigned a job and had his privileges restored in full.

Based on these allegations, Plaintiff alleges deliberate indifference to a serious medical need in violation of the Eighth Amendment, failure to protect in violation of the Eighth Amendment, and an unreasonable search in violation of the Fourth Amendment.

**C.   ANALYSIS**

   1.   Eighth Amendment- Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Here, Plaintiff alleges that Defendants Follett and Zamora, who denied his appeals for surgery, violated the Eighth Amendment. Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983. That circumstance has not been presented here.

Plaintiff has failed to state an underlying Eighth Amendment claim against any Defendant, and therefore he cannot state a claim against Defendants Follett and Zamora for denying his appeals. In his original complaint, Plaintiff attempted to state an Eighth Amendment claim against doctors Ogbuehi, Jackson and Scharffenberg for refusing to approve his surgery. However, the Court explained that this was not a case where Plaintiff was denied medical treatment. He received numerous diagnostic tests to rule out cancer. Instead, Plaintiff disagrees with the method of treatment, and this is insufficient as a matter of law to establish deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Plaintiff could not show that "the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Although Plaintiff now attempts to shift liability to the Defendants who denied his health care appeals, he continues to fail to state a claim. As there was no underlying violation, Defendants Follett and Zamora did not ignore a constitutional violation. In fact, Defendants relied on CDCR policy, a policy which Plaintiff does not challenge, to deny his appeal. Although Plaintiff may disagree as to whether the surgery is cosmetic in nature, his disagreement does not create an Eighth Amendment violation.

7

Finally, the Court notes that in denying his appeal at the Second Level, Defendant Follett noted that Plaintiff did not complain of pain to Dr. Ogbuehi.  Rather, Plaintiff had a psychological concern due to the size of his breasts, which prevented him from taking his shirt off when he wanted to.  Indeed, although Plaintiff alleges that surgery is his only remedy for significant pain, his medical records do not include any complaints of pain.  Similarly, as Plaintiff's exhibits show, the doctors who allegedly recommended surgery as the only option for his pain specifically noted that this was a cosmetic issue.  In the most recent treatment notes, Dr. Scharffenberg states that Plaintiff wanted surgery for his large breasts, even though Plaintiff was aware that such surgery is for cosmetic reasons only.

For these reasons, Plaintiff fails to state a claim against Defendants Follett and Zamora. Plaintiff was given an opportunity to fix this deficiency, but failed to do so.

2. Fourth Amendment Search

The Fourth Amendment prohibits only unreasonable searches.  Bell v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861 (1979); Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1140 (9th Cir. 2011), cert. denied, 131 S.Ct. 2964 (2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  The reasonableness of the search is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights the search entails.  Bell, 441 U.S. at 558-59 (quotations omitted); Byrd, 629 F.3d at 1141; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder, 860 F.2d at 332-34.  Factors that must be evaluated are the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  Bell, 441 U.S. at 559 (quotations omitted); Byrd, 629 F.3d at 1141; Bull, 595 F.3d at 972; Nunez, 591 F.3d at 1227; Michenfelder, 860 F.2d at 332.

Although Plaintiff alleges an unreasonable search by Defendant Willard, his allegations show that he was not searched in a public location, nor was he forced to take his shirt off in front of others. Rather, as Plaintiff requested, he was taken to the cage and searched.  There can be no Fourth Amendment violation under such facts.

Plaintiff fails to state a claim under the Fourth Amendment and this deficiency cannot be cured.

### 3. Eighth Amendment- Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Here, Plaintiff alleges that in November 2012, he was attacked by a group of inmates who had been coerced by Defendant Emerson. He further alleges that in January 2013, Defendant Emerson placed Inmate Moss into a cell and coerced him to attack Plaintiff. This is sufficient to state an Eighth Amendment claim against Defendant Emerson.[2]

### D. CONCLUSION AND ORDER

Plaintiff's Complaint states a cognizable claim against Defendant Emerson for violation of the Eighth Amendment. It does not state any other claims against any other Defendants. Plaintiff has had an opportunity to correct the deficiencies, but has failed to do so. Further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000)

Based on the foregoing, it is HEREBY ORDERED that:

1. This action proceed against Defendant Emerson for violation of the Eighth Amendment; and

2. All further claims and Defendants are DISMISSED.

IT IS SO ORDERED.

Dated: **June 3, 2014**          /s/ Dennis L. Beck
                                  UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff will be instructed on service by separate order.

9